## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ──────────────────────────────── x | |
| CME ACQUISITIONS, LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Court No. 24-00032 |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant, | : |
| | : |
| and | : |
| | : |
| OUTOKUMPU STAINLESS USA, LLC and | : |
| NORTH AMERICAN STAINLESS, | : |
| | : |
| Defendant-Intervenors. | : |
| ──────────────────────────────── x | |

Upon consideration of the Motion for Judgment on the Administrative Record filed by plaintiff, CME Acquisitions, LLC ("CME") and upon all other papers and proceedings herein, the Court

**ORDERS** that CME's Motion is granted; and further

**FINDS** that the contested final determination of the U.S. Department of Commerce ("Commerce") in *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022*, 89 Fed. Reg. 902 (Jan. 8, 2024) ("*Final Determination*") is not supported by substantial evidence on the record, and is otherwise not in accordance with law; and further

**ORDERS** that this matter is remanded to Commerce for reconsideration of the *Final Determination* in accordance with the decision of this Court.

**SO ORDERED.**

_____
Judge Gary S. Katzmann

Dated: _____, 2024
    New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

————————————————————————— x
                                                    :
CME ACQUISITIONS, LLC,                              :
                                                    :
      Plaintiff,                              :
                                                    :     Court No. 24-00032
      v.                                      :
                                                    :
UNITED STATES,                                      :
                                                    :
      Defendant,                              :
                                                    :
      and                                     :
                                                    :
OUTOKUMPU STAINLESS USA, LLC and                    :
NORTH AMERICAN STAINLESS,                           :
                                                    :
      Defendant-Intervenors.                  :
————————————————————————— x

## PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

      Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade, Plaintiff

CME Acquisitions, LLC ("CME") respectfully moves for judgment on the administrative record.

For the reasons set forth in the accompanying Memorandum of Law in support of its motion,

CME requests that the Court determine that the U.S. Department of Commerce's final

determination in *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of*

*Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022*,

89 Fed. Reg. 902 (Jan. 8, 2024), is not supported by substantial evidence on the record and is

otherwise not in accordance with law.

                                    Respectfully submitted,

                                      GRUNFELD, DESIDERIO, LEBOWITZ,
                                      SILVERMAN & KLESTADT LLP

                                      */s/ Ned H. Marshak*
                                      Ned H. Marshak*
                                      Jordan C. Kahn
                                      Eve Q. Wang

*599 Lexington Avenue FL 36
New York, NY 10022
(212) 557-4000

1201 New York Ave., NW, St. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff CME Acquisitions, LLC*

Dated:  August 21, 2024

**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

———————————————————————— x
                                      :

CME ACQUISITIONS, LLC,         :

                                        :

       Plaintiff,            :

                                        :      Court No. 24-00032

       v.                  :

                                        :

UNITED STATES,              :

           Defendant,      :

                                        :

       and                :

                                        :

OUTOKUMPU STAINLESS USA, LLC and
NORTH AMERICAN STAINLESS,     :

                                        :

       Defendant-Intervenors.      :

———————————————————————— x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CME
ACQUISITIONS, LLC'S MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Ned H. Marshak*
Jordan C. Kahn
Eve Q. Wang

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Avenue FL 36
New York, NY 10022
(212) 557-4000

1201 New York Ave., NW, St. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff CME Acquisitions, LLC*

Dated: August 21, 2024

## TABLE OF CONTENTS

STATEMENT PURSUANT TO RULE 56.2 ................................................................................ 1

ISSUES OF LAW PRESENTED AND SUMMARY OF ARGUMENT ..................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................................... 12

    Commerce's Decision to Assign a Simple Average of Two Total AFA Rates to Companies
    Not Individually Examined Is Not Supported By Substantial Evidence and Is Contrary to Law
    .................................................................................................................................................. 12

CONCLUSION ........................................................................................................................ 21

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Albemarle Corp. & Subsidiaries v. United States*,
821 F.3d 1345 (Fed. Cir. 2016)...........................................................................16

*Baroque Timber Indus. (Zhongshan) Co. v. United States*,
971 F. Supp. 2d 1333 (CIT 2014)........................................................................16

*Bowe-Passat v. United States*,
17 CIT 335 (1993) ..........................................................................................20, 21

*Changzhou Wujin Fine Chem. Factory Co. v. United States*,
701 F.3d 1367 (Fed. Cir. 2012)...........................................................................17

*Gallant Ocean (Thailand) Co., v. United States*,
602 F.3d 1319 (Fed. Cir. 2010)...........................................................................17

*GODACO Seafood Joint Stock Co. v. United States*,
539 F. Supp. 3d 1286 (CIT 2021), *appeal withdrawn*, No. 2022-1202, 2022
WL 1739162 (Fed. Cir. Feb. 16, 2022)...............................................................16

*Kisaan Die Tech Priv. Ltd. v. United States,* 665 F. Supp. 3d 1364 (CIT 2023) ..........................16

*Linyi Chengen Imp. & Exp. Co. v. United States*,
609 F. Supp. 3d 1392 (CIT 2022).........................................................................16

*Loper Bright Enterprises v. Raimondo*,
144 S. Ct. 2244 (June 28, 2024)...........................................................................14

*Nan Ya Plastics Corp. v. United States*,
810 F.3d 1333 (CIT 2016) ...................................................................................17

*Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354
(CIT 2014) ...........................................................................................................16

*PrimeSource Bld. Prod., Inc. v. United States*,
No. 2022-2128, 2024 WL 3682552 (Fed. Cir. Aug. 7, 2024) ........................ *passim*

*Pro-Team Coil Nail Enterprise Inc. v United States*,
No. 2022-2241, 2024 WL 3824005 (Fed. Cir. Aug. 15, 2024) ..............................13

*Rhone Poulenc, Inc. v. United States*,
899 F.2d 1185 (Fed. Cir. 1990)............................................................................17

*Siemens Gamesa Renewable Energy v. United States,*
  621 F. Supp. 3d 1337 (CIT 2023) ......................................................16

*SNR Roulements v. United States,*
  402 F.3d 1358 (Fed. Cir. 2005) .........................................................17

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
  716 F.3d 1370 (Fed. Cir. 2013) .................................................. *passim*

**Statutes**

19 U.S.C. § 1673d .................................................................12, 16

**Federal Register Publications**

*Certain Quartz Surface Products From India: Final Results of Antidumping Duty*
  *Administrative Review; 2019-2021*, 88 Fed. Reg. 1188 (Jan. 9, 2023) ......18, 19, 20

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,*
  87 Fed. Reg. 54,463 (Sept. 6, 2023) ...................................................6

*Notice of Antidumping Duty Order; Stainless Steel Sheet and Strip in Coils From*
  *United Kingdom, Taiwan, and South Korea*, 64 Fed. Reg. 40,555
  (July 27, 1999) ..........................................................................3

*Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel*
  *Sheet and Strip in Coils From Taiwan*, 64 Fed. Reg 30592 (June 8, 1999) ............3

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial*
  *Rescission of Antidumping Duty Administrative Review*, 67 Fed. Reg. 6682
  (Feb. 13, 2002) ..........................................................................3

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial*
  *Rescission of Antidumping Duty Administrative Review*, 67 Fed. Reg. 76,721
  (Dec. 13, 2002) ..........................................................................4

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial*
  *Rescission of Antidumping Duty Administrative Review*, 69 Fed. Reg. 5960
  (Feb. 9, 2004) ...........................................................................4

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial*
  *Rescission of Antidumping Duty Administrative Review*, 70 Fed. Reg. 7715
  (Feb. 15, 2005) ..........................................................................4

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial*
  *Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 7519
  (Feb. 13, 2006) ..........................................................................4

*Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 75,504 (Dec. 15, 2006) ...........................................................................................................5

*Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 73 Fed. Reg. 6932 (Feb. 6, 2008) ...........................................................................5

*Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 73 Fed. Reg. 74,704 (Dec. 9, 2008) .......................................................................5

*Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 75 Fed. Reg. 5947 (Feb. 5, 2010) .........................................................................5

*Stainless Steel Sheet and Strip in Coils From Taiwan: Preliminary Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 49,467 (Aug. 13, 2010) ...........................................................................................................6

*Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results of Antidumping Duty Administrative Review*, 75 Fed. Reg. 76,700 (Dec. 9, 2010) ....................6

*Stainless Steel Sheet and Strip in Coils from Taiwan: Preliminary Results of Antidumping Duty Administrative Review and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 20,481 (Apr. 4, 2023).........................................8, 10

*Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022*, 89 Fed. Reg. 902 (Jan. 8, 2024).................................................1, 10, 11

*Welded Carbon Steel Standard Pipe and Tube Products From Turkey: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 63,155 (Dec. 7, 2018) ...........................................................................12

Plaintiff CME Acquisitions, LLC ("CME") submits this Memorandum of Law to support its Motion for Judgment on the Agency Record.

## STATEMENT PURSUANT TO RULE 56.2

This is an appeal from the final determination by the U.S. Department of Commerce, International Trade Administration ("Commerce" or "Department") in the 2021-2022 administrative review ("AR 21-22") of the antidumping duty ("ADD") order on Stainless Steel Sheet and Strip in Coils ("Stainless Steel" or "SSSSC") from Taiwan, for the period of review ("POR") spanning July 1, 2021, to June 30, 2022, published in *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022*, 89 Fed. Reg. 902 (Jan. 8, 2024), P.R. 68 ("*Final Results*"), accompanying Issues and Decision Memorandum, P.R. 67 ("IDM").

## ISSUES OF LAW PRESENTED AND SUMMARY OF ARGUMENT

In AR 21-22, Commerce selected two mandatory respondents for individual examination; both respondents notified the Department of their intent not to participate. In the preliminary results, the Department assigned the two respondents a 21.10 percent ADD rate, the highest final dumping rate calculated for a producer's direct exports to the United States, based on facts otherwise available with application of an adverse inference ("AFA"). For the non-selected companies not subject to individual examination, including those from whom CME imported subject merchandise, Commerce assigned a rate of 4.40 percent, the rate assigned to the non-selected companies in the most recently completed segment of this proceeding.

In the *Final Results*, Commerce abandoned the ADD rate of 4.40 percent assigned to the non-selected companies and instead assigned them the mandatory respondents' AFA rate of 21.1 percent.

The issue in this appeal is whether Commerce's decision to assign the total AFA rate of the two mandatory respondents to the companies not selected for individual examination was supported by substantial evidence and in accordance with law.

CME submits that the answer is no. As a matter of law, Commerce is required to calculate the rate for non-elected respondents in a reasonable manner. Commerce's decision in AR 21-22 to simple average the two adverse ADD rates assigned to noncooperating mandatory respondents and to apply that average to a non-selected company for the final results in this review was not supported by substantial evidence and represents an unexplained, sharp departure from Department practice in proceedings under this ADD Order as well as recent agency action, in which respondents were only assigned an adverse ADD rate if they declined to cooperate. Moreover, Commerce acted contrary to the controlling principles set forth by the Federal Circuit in *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, that require ADD rates for non-selected respondents be fair, accurate, and bear some relationship to their actual dumping margins. *Bestpak* remains controlling law and was not overruled by the Federal Circuit in its recent decision in *PrimeSource Bld. Prod., Inc. v. United States*. *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013); *PrimeSource Bld. Prod., Inc. v. United States,* No. 2022-2128, 2024 WL 3682552 (Fed. Cir. Aug. 7, 2024).

Commerce further improperly faulted CME for failing to rebut its presumption that the adverse ADD rate assigned for the two mandatory respondents was representative of the ADD margin for all other producers/exporters. Commerce preliminarily determined that the adverse ADD rate was not reasonably reflective of the non-selected companies' potential ADD margins in AR 21-22, at which time it reasonably pulled forward a rate assigned to all-others respondents from the most recently completely segment. Commerce's reversal disregarded numerous

decisions by Commerce and reviewing courts, and also deprived the public – including importers like CME, who imported from companies not selected for individual examination – of a meaningful opportunity to comment on the data.

Finally, Commerce improperly claimed a lack of evidence showing that the non-examined companies' dumping was different from that of the mandatory respondents while not advising interested parties of the need to submit such evidence. Commerce's "gotcha" policy was contrary to law.

## FACTUAL BACKGROUND

The Department issued the ADD order on Stainless Steel from Taiwan on July 27, 1999. *Notice of Antidumping Duty Order; Stainless Steel Sheet and Strip in Coils From United Kingdom, Taiwan, and South Korea*, 64 Fed. Reg. 40,555 (July 27, 1999). The Department calculated rates of 14.95 percent, 34.95 percent, and zero for named respondents, and an "all others" rate of 12.61 percent. The 34.85 percent rate was based on total AFA because the two named respondents who received this rate failed to cooperate to the best of their ability. *Notice of Final Determination of Sales at Less Than Fair Value: Stainless Steel Sheet and Strip in Coils From Taiwan*, 64 Fed. Reg 30592 (June 8, 1999).

For the first annual review, with the POR from January 4, 1999, through June 30, 2000, the Department calculated a zero ADD rate for two mandatory respondents, YUSCO and Tung Mung, and applied a 21.10 percent total AFA rate to the third mandatory respondent, Chia Far. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 67 Fed. Reg. 6682 (Feb. 13, 2002).

For the second annual review, with the POR from July 1, 2000, through June 30, 2001, the Department: calculated a zero ADD rate for the mandatory respondent YUSCO; calculated a

1.11 percent ADD rate for the mandatory respondent Chia Far; and applied a 21.10 percent total AFA rate to the third mandatory respondent, Tung Mung. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 67 Fed. Reg. 76,721 (Dec. 13, 2002).

For the third annual review, with the POR from July 1, 2001, through June 30, 2002, the Department: calculated a 1.96 percent ADD rate for the mandatory respondent YUSCO; calculated a 0.98 percent ADD rate for the mandatory respondent Chia Faer; and applied a 21.10 total AFA rate to the third mandatory respondent, Tung Mung. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 69 Fed. Reg. 5960 (Feb. 9, 2004).

For the fourth annual review, with the POR from July 1, 2002, through June 30, 2003, the Department calculated a 1.92 percent ADD rate for the mandatory respondents YUSCO and Tung Mung, and a 1.10 percent ADD rate for the mandatory respondent Chia Far. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 70 Fed. Reg. 7715 (Feb. 15, 2005).

For the fifth annual review, with the POR from July 1, 2003, through June 30, 2004, the Department calculated a zero ADD rate for the mandatory respondent Yieh and a 1.36 percent ADD rate for the mandatory respondent Chia Far. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 7519 (Feb. 13, 2006). The Department applied a 21.1 percent total AFA rate to the following parties who failed to cooperate: PFP Taiwan Co., Ltd., Yieh Trading Corporation, Goang Jau Shing Enterprise Co., Ltd., and Chien Shing Stainless Steel Company Ltd. *Id.*

For the sixth annual review, with the POR from July 1, 2004, through June 30, 2005, the Department calculated a 0.79 percent ADD rate for the mandatory respondent Chia Far, and applied a 21.10 percent total AFA rate to the following mandatory respondents who failed to cooperate: Goang Jau Shing Enterprise Co., Ltd., PFP Taiwan Co., Ltd., Yieh Trading Corporation, Chien Shing Stainless Steel Company Ltd., and Tang Eng Iron Works Company, Ltd. *Stainless Steel Sheet and Strip From Taiwan; Final Results and Partial Rescission of Antidumping Duty Administrative Review*, 71 Fed. Reg. 75,504 (Dec. 15, 2006).

For the seventh annual review, with the POR from July 1, 2005, through June 30, 2006, the Department calculated a 1.41 percent ADD rate for the mandatory respondent Chia Far and applied a total AFA rate of 21.1 percent to the mandatory respondents who failed to cooperate: PFP Taiwan Co., Ltd.; and Yieh Trading Corp./Yieh Corp. *Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 73 Fed. Reg. 6932 (Feb. 6, 2008).

For the eighth annual review, with the POR from July 1, 2006, through June 30, 2007, the Department calculated a 2.71 percent rate for the mandatory respondent Chia Far, the sole respondent subject to the review. *Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 73 Fed. Reg. 74,704 (Dec. 9, 2008).

For the ninth annual review, with the POR from July 1, 2007, through June 30, 2008, Commerce calculated a 2.30 percent rate for the sole respondent, Chia Far. *Stainless Steel Sheet and Strip in Coils From Taiwan: Final Results and Rescission in Part of Antidumping Duty Administrative Review*, 75 Fed. Reg. 5947 (Feb. 5, 2010).

For the tenth annual review ("AR 10"), with the POR from July 1, 2008, through June 30,

2009, Commerce calculated a zero ADD rate for the mandatory respondent, Chai Far, and

applied a 4.30 percent rate to 19 non-selected respondents. *Stainless Steel Sheet and Strip in*

*Coils From Taiwan: Final Results of Antidumping Duty Administrative Review*, 75 Fed. Reg.

76,700 (Dec. 9, 2010). The 4.30 ADD percent rate was based on the following analysis:

> Where, as here, the only calculated margins are zero or *de mimimis*, it is the
> Department's practice to base the review-specific rate on calculated rates from
> prior segments of the proceeding. . . .

> Accordingly, we have preliminarily based the review-specific rate on the 4.30
> percent in the 2007-2008 administrative review, which is the most recently
> completed segment of this proceeding. *See 2007-2008 Final Results* 75 FR at
> 5949. This rate is applicable to the following companies. . . .

*Stainless Steel Sheet and Strip in Coils From Taiwan: Preliminary Results of Antidumping Duty*

*Administrative Review*, 75 Fed. Reg. 49,467, 49,474 (Aug. 13, 2010). Since then, and until the

AR 21-22 subject to this Civil Action, the Department has not completed an annual review of the

ADD Order on Stainless Steel from Taiwan.

On September 6, 2023, the Department initiated AR 21-22. This review covered sales of

subject merchandise produced and exported by multiple Taiwan companies during the POR: July

1, 2021, through June 30, 2022. *Initiation of Antidumping and Countervailing Duty*

*Administrative Reviews*, 87 Fed. Reg. 54,463, 54,471-72 (Sept. 6, 2023), P.R. 7. The review was

initiated on 61 producers and/or exporters, including those from whom CME imported subject

merchandise, in a request for review filed by Petitioners, Defendant-Intervenors Outokumpu

Stainless USA, LLC and North American Stainless (collectively, "Petitioners"), on July 29,

2022. Letter from AMS Trade LLC to U.S. Department of Commerce (July 29, 2022), P.R. 2.

On September 7, 2022, Commerce released U.S. import data obtained from Customs and

Border Protection ("CBP") of subject merchandise entered during the POR to counsel who were

under the Administrative Protective Order and sought comments on those data. U.S. Department

of Commerce Memorandum to File (Sept. 7, 2022), C.R. 1-2, P.R. 6. On October 4, 2022, four companies, including Yie United Steel Corporation ("Yie United"), filed no-shipment claims with the Department. Letter from Appleton Luff Pte. Ltd. to U.S. Department of Commerce (Oct. 4, 2022), P.R. 12-15. On October 7, 2022, the Department selected two companies, Lien Kuo Metal Industries Co., Ltd. ("Lien Kuo") and S More Steel Materials Co., Ltd. ("S More"), as mandatory respondents. U.S. Department of Commerce Respondent Selection Memorandum (Oct. 7, 2022), C.R. 3, P.R. 16 ("RS Memo").

In its RS Memo, the Department stated that this review covered 61 exporters and producers which is a large number; thus, it selected two companies "accounting for the largest volume of subject imports":

> **Given the large number** of exporters/producers of SSSSC from Taiwan for which a review was requested, Commerce's current resource constraints, and practical considerations outlined above, and after careful consideration, we find that **it is not practicable to individually examine all exporters/producers of SSSSC from Taiwan for which a review was requested**, as directed by section 777A(c)(1) of the Act.

*Id*. at 3 (emphases added).

However, in the Attachment to the RS Memo, the Department listed only three companies for which a review was requested during the POR, including Lien Kuo and S More, the two mandatory respondents, and a third company, Yie United. *Id*. Attachment. In the public version of that Attachment, the total exports volume and the entry volume breakdowns among those three companies were removed. *Id*.

On October 19, 2022, the Department issued the initial questionnaire to Lien Kuo and S More. U.S. Department of Commerce Questionnaires (Oct. 19, 2022), P.R. 18-19. In November 2022, Lien Kuo and S More notified the Department that neither company would be able to complete the questionnaire in a timely manner:

> Notwithstanding S-More and Lien Kuo's best efforts to collect the information necessary to respond, it has become apparent that these companies will not be able to complete this project in a timely manner. The Department's questionnaire requires submission of a massive amount of data, including data which these companies do not maintain in the normal course of business in their electronic record-keeping system. Other data must be obtained from unaffiliated vendors.

Letter from Lien Kuo and S-More to U.S. Department of Commerce (Nov. 23, 2022),

P.R. 32. After receiving Lien Kuo and S-More's letter, the Department did not select

additional respondents for AR 21-22.

In February 2023, Petitioners filed pre-preliminary comments, arguing that the

Department should apply an AFA rate of 36.44 percent or, at minimum, an AFA rate of 21.10

percent, to both mandatory respondents. For companies not selected for individual examination,

Petitioners argued that Commerce should assign the AFA rate assigned to the mandatory

respondents. Letter from Petitioners to U.S. Department of Commence (Feb. 17, 2023), P.R. 47.

On April 4, 2023, in the *Preliminary Results*, the Department determined that because

Lien Kuo and S More failed to cooperate by not acting to the best of their ability to comply with

the Department's request for information, the application of AFA was warranted. *Stainless Steel

Sheet and Strip in Coils from Taiwan: Preliminary Results of Antidumping Duty Administrative

Review and Preliminary Determination of No Shipments; 2021–2022*, 88 Fed. Reg. 20,481 (Apr.

4, 2023), P.R. 51 ("*Preliminary Results*"), and accompanying Decision Memorandum, P.R. 49

("DM"). For those two companies, the Department assigned an AFA rate of 21.10 percent, the

highest dumping margin from any segment of this proceeding for a producer's direct exports to

the United States.[1] *Preliminary Results*, 88 Fed. Reg. at 20,483.

---

[1] Commerce determined that consistent with prior segments of this proceeding, an AFA dumping margin based on middleman dumping would be inappropriate because the record does not indicate that any of Lien Kuo's or S More's exports to the United States involved a middleman. CME does not contest the Department's assigning an AFA rate of 21.10 percent to Lien Kuo and

For the companies not selected for individual examination, the Department described its legal framework to determine the rate preliminarily assigned as follows.

> Generally, Commerce looks to section 735(c)(5) of the Act, which provides instructions for calculating the all-others rate in a market economy investigation, for guidance when calculating the rate for companies that were not selected for individual examination in an administrative review. Under section 735(c)(5)(A) of the Act, the all-others rate is normally "an amount equal to the weighted average of the estimated weighted-average dumping margins established for exporters and producers individually investigated, excluding any zero or *de minimis* margins, and any margins determined entirely {on the basis of facts available}."
>
> Section 735(c)(5)(B) further provides if the estimated weighted-average dumping margins established for all exporters and producers individually investigated are zero, *de minimis*, or are determined entirely by application of facts available, Commerce may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated. The SAA further states that, "{t}he expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." However, the SAA also instructs that, "if this {expected} method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods" to calculate the rate for the companies not selected for individual examination in this review.

DM at 6-7 (footnote omitted).

Following this legal framework, Commerce declined to apply the mandatory respondents' total AFA rate of 21.10 percent to the companies not selected for individual examination in this review. *Id*. at 7. Commerce determined that the total AFA rate is "not reasonably reflective of the non-selected companies' potential dumping margins during the POR." *Id*. Instead, Commerce preliminarily assigned a dumping margin of 4.30 percent to these companies, the rate assigned to the "all-others" rate respondents in the most recently completed

---

S More. Petitioners agreed that Commerce correctly applied the 21.10 percent AFA rate to Lien Kuo and S More. Petitioners' Case Brief (May 8, 2023), P.R. 52.

segment of this proceeding. *Id*. Commerce concluded that 55 companies had been designated as non-selected respondents in this review. *Preliminary Results*, 88 Fed. Reg. at 20,484.

On May 8, 2023, Petitioners filed their administrative case brief. Petitioners' Case Brief (May 8, 2023), P.R. 52. On May 15, 2023, CME, a U.S. importer of subject merchandise exported by the non-selected companies filed a notice of appearance and timely filed its reply brief. In its reply brief, CME provided additional case law in support of Commerce's preliminary decision on the all-others rate assigned to respondents not selected for individual examination. Amended Entry of Appearance (May 15, 2023), P.R. 53; CME Rebuttal Brief (May 15, 2023), P.R. 57. Because Commerce's preliminary decision on the "all-others" ADD rate conformed to law and was consistent with its past practice under which the Department pulled forward a rate assigned to companies not selected for individual examination from the most recently completely segment, CME reasonably believed that it had no reason to "rebut {Commerce's} presumption that the margins assigned to the mandatory respondents are representative of the non-selected companies." IDM at 15.

For the *Final Results*, Commerce continued to apply the total AFA rate of 21.10 percent to the two mandatory respondents. 89 Fed. Reg. at 903. For the "all-others" rate respondents Commerce reversed its preliminary decision and assigned them a simple average of the AFA rates applied to the two mandatory respondents. *Id*. Specifically, Commerce discussed its decision as follows:

> With respect to the rate assigned to the non-selected companies, Commerce preliminarily found that the mandatory respondents' total AFA dumping margin of 21.10 percent is not reasonably reflective of the non-selected companies' potential dumping margins during the POR. However, as discussed below, for these final results we have reconsidered the facts of this case, our past practice, and legal framework, and taken into account the comments of interested parties. **We find that the record does not indicate that the AFA rate assigned to the mandatory respondents is not reasonably reflective of the likely behavior of**

**the non-selected companies during the POR. In addition, we do not find that assigning a non-selected rate based on the rates assigned to the mandatory respondents pursuant to the expected method is not feasible.** Accordingly, for our final results, and consistent with our practice and the prevailing law, we have applied the "expected method," as intended by Congress, and assigned a simple average of the AFA rates applied to the mandatory respondents to the companies not selected for individual examination.

IDM at 8-9 (emphases added).

As discussed below, Commerce's determination that applying a simple average of two total AFA rates assigned to the mandatory respondents to non-selected companies in this review was not supported by substantial evidence. And it is also unreasonable, and contrary to law, for Commerce to fault CME for failing to rebut its presumption that the AFA rate assigned for the two mandatory respondents was representative to the ADD margin for all other producers/exporters, when Commerce:

1. preliminarily determined that the total AFA rate was not reasonably reflective of the non-selected companies' potential ADD margins in this review and reasonably pulled forward an ADD rate assigned to all-others respondents from the most recently completely segment;

2. disregarded numerous decisions by Commerce and reviewing courts cited in CME's reply brief in support of the Department's preliminary decision;

3. deprived the public – including importers like CME, who imported from companies not selected for individual examination – a meaningful opportunity to comment on the CBP data when it listed only three companies in the RS Memo as companies subject to review, without providing any proportionality of other non-selected companies in the public document; and

4. claimed lack of substantial evidence on the record showing that the non-examined companies' dumping was different from that of the mandatory respondents while it did not even attempt to select additional respondents after being notified of no intent to participate by the two mandatory respondents early in AR 21-22.

For these reasons, the Federal Circuit's decision in *PrimeSource Bldg. Prod., Inc*, 2024 WL 3682552 at*11, does not constitute precedent that this Court is required to affirm Commerce's *Final Results*. Accordingly, Commerce's final decision should be reversed, and this

Court should order Commerce to assign a 4.30 percent rate to the "all others," non-selected

respondents.

## ARGUMENT

### Commerce's Decision to Assign a Simple Average of Two Total AFA Rates to Companies Not Individually Examined Is Not Supported By Substantial Evidence and Is Contrary to Law

Commerce's decision as to how to calculate ADD rates for non-investigated companies

in investigations is governed by Section 735(c)(5), Tariff Act of 1930, as amended:

> (A) General rule
>
> For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.
>
> (B) Exception
>
> **If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e** of this title, the administering authority **may use any reasonable method** to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(5) (emphases added).

The Department has applied this statutory language to annual reviews. *See, e.g.*, *Welded*

*Carbon Steel Standard Pipe and Tube Products From Turkey: Final Results of Antidumping*

*Duty Administrative Review; 2016-2017*, 83 Fed. Reg. 63,155 (Dec. 7, 2018) ("The statute and

Commerce's regulations do not address the establishment of a rate to be applied to companies

not selected for examination when Commerce limits its examination in an administrative review

pursuant to section 777A(c)(2) of the Act. Generally, Commerce looks to section 735(c)(5) of the

Act, which provides instructions for calculating the all-others rate in a market-economy

investigation, for guidance when calculating the rate for companies which were not selected for

individual review in an administrative review").

Commerce reasoned that simple-averaging the two AFA rates assigned to mandatory

respondents to non-selected company in this review was a default, expected method under

735(c)(5)(B), without consideration of reasonableness:

> The courts have further explained that "the 735(c)(5)(B)e expected method is the
> default method" and any party seeking to depart from the expected method must
> demonstrate that there is a reasonable basis for doing so. . . .  Use of the
> mandatory respondent's AFA margin as the basis for the rate assigned to the non-
> examined companies is therefore an application of section 735(c)(5)(B) of the
> Act.

IDM at 10. Furthermore, according to Commerce, it was the non-selected companies' burden to

rebut its presumption:

> Accordingly, we find that CME fails to cite substantial evidence to rebut **our
> presumption** that the mandatory respondents are reflective of the activities of all
> exporters during the POR and **that the application of the expected method is
> reasonable** in this review.

*Id*. at 15 (emphases added).

Plaintiff acknowledges that in a decision dated August 7, 2024 the Federal Circuit agreed

with Commerce's legal analysis. *PrimeSource Bldg. Prod., Inc.*, 2024 WL 3682552 at*11.[2]

However, as discussed below, Commerce's decision to apply the simple average of the two AFA

rates to non-selected company for the final results in this review was not supported by substantial

evidence, represents an unexplained, sharp departure from Department practice in proceedings

---

[2] In *Pro-Team Coil Nail Enterprise Inc. v United States*, the Federal Circuit applied the same
rationale as it did in *PrimeSource*, and held that "Commerce's use of the expected method was
appropriate." No. 2022-2241, 2024 WL 3824005, *6 (Fed. Cir. Aug. 15, 2024). The reasons why
*Pro-Team* does not constitute controlling precedent in this case are the same as the reasons why
*Prime Source* does not constitute controlling precedent.

under the ADD Order on Stainless Steel from Taiwan, and is contrary to the controlling

principles set forth in *Yangzhou Bestpak Gifts & Crafts Co.*, and its progeny – which remain

controlling law.

Moreover, insofar as the Federal Circuit in *PrimeSourc*e appears to have relied on

Commerce's construction of the statutory language as the basis of its opinion, the Federal Circuit

failed to follow the holding of the U.S. Supreme Court in *Loper Bright Enterprises v.

Raimondo*, 144 S. Ct. 2244, 1-2, 35 (June 28, 2024). *Loper Bright* underscores the "solemn duty

of the Judiciary" to interpret statutes and "say what the law is." *Id*. at 7-8 (internal quotations

omitted). Further, *Loper Bright* forecloses this Court from affirming Commerce's decision

merely upon finding that the government's statutory interpretations are "reasonable," and for that

reason alone, "must" affirm. *Id*. at 19, 23 (doubting whether an "otherwise-reasonable reading of

a statute" could ever be "a clear misconstruction"). Finally, *Loper Bright* clarified that it "makes

no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all

relevant interpretive tools, concludes is best." *Id.* at 23. In short, *Loper Bright* expressly held that

"in **the business of statutory interpretation, if {the Agency's analysis} is not the best, it is

not permissible**." *Id*. (emphasis added).

In *Bestpak,* the Federal Circuit reversed the Department's decision to calculate a

separate-rate in a non-market economy ADD investigation by taking a simple average of a *de

minimis* rate and a rate based on total AFA. 716 F.3d at 1378-81. The Federal Circuit reasoned

that while Commerce's methodology conformed to law, it was not supported by substantial

evidence of record in the pending appeal. *Id*. In determining whether the substantial evidence

standard had been satisfied, the Federal Circuit focused on several critical factors. First, the

Federal Circuit reasoned that "{f}orm should be disregarded for substance and the emphasis

should be on economic reality." *Id*. at 1378 (citation omitted). Second, the Federal Circuit

reasoned that "an overriding purpose of Commerce's administration of antidumping laws is to

calculate dumping margins as accurately as possible." *Id*. at 1379. The Federal Circuit continued:

> Assigning a non-mandatory, separate rate respondent a margin equal to over 120% of the only fully investigated respondent with no other information is unjustifiably high and may amount to being punitive, which is not permitted by the statute. *See F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000) ("{T}he purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins.").

> Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin. . . .  Likewise, rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins.

> Although Commerce argues in its *Final Remand Results* that it was the best it could do because of the limited record, this court finds no support in this court's precedents or the statute's plain text for the proposition that limited resources or statutory time constraints can override fairness or accuracy.

*Id*. at 1379-80.

Significantly, *PrimeSource* did not overrule *Bestpak.* Rather, in *PrimeSource*, the Federal

Circuit distinguished *Bestpak* in the following manner:

> In *Bestpak*, Commerce did not employ the expected method, and instead used "a simple average rather than a weighted average." 716 F.3d at 1378. In deviating from the expected method, Commerce was required to use "other reasonable methods." *Id.* This court determined that the administrative record lacked substantial evidence supporting a conclusion that the chosen method was reasonable as applied to the facts of that case. *Id. Bestpak* does not address Commerce's burden when it calculates the all-others rate using the expected method.

*PrimeSource*, 2024 WL 3682552 at*7.

Similarly, in the instant case, Commerce did not use a weighted average to calculate the

ADD margins of the "all other" companies and, as discussed in this Brief, "the administrative

record lacked substantial evidence supporting a conclusion that the chosen method was

reasonable as applied to the facts of that case." *Id.* Moreover, contrary to the teaching of *Bestpak,*

and its progeny,[3] Commerce in its *Final Results* did not consider "fairness or accuracy" and the

principle that "rate determinations for nonmandatory, cooperating separate rate respondents must

also bear some relationship to their actual dumping margins." *Bestpak*, 716 F.3d at 1380.[4]

---

[3] The *Bestpak* rationale has been followed by multiple decisions of this Court. *See, e.g.*, *Kisaan Die Tech Priv. Ltd. v. United States,* 665 F. Supp. 3d 1364, 1381-82 (CIT 2023) ("Chandan's failure to act to the best of its ability in responding to information requests in the review, which was the sole basis upon which Commerce applied "total {AFA}" to Chandan, had no factual relationship to the unexamined respondents' sales of subject merchandise that pertained to the first administrative review," and that "the rate from which the 145.25% rate was taken, which was assigned to an uncooperative respondent in the investigation and also was based on total AFA, similarly lacked a relationship to those sales"); *Siemens Gamesa Renewable Energy v. United States*, 621 F. Supp. 3d 1337, 1345 (CIT 2023) ("{*Bestpak*} held that Commerce must use a method that is reasonable based on substantial record evidence in determining an all-others rate under 19 U.S.C. § 1673d(c)(5)(B), even when following the 'averaging' methodology expressly permitted by that provision."); *Navneet Publications (India) Ltd. v. United States*, 999 F. Supp. 2d 1354, 1365 (CIT 2014) ("When placed in context, the 11.01% figure appears aberrational because it is significantly higher than all prior margins calculated for cooperative respondents, and it represents a nearly four-fold increase from the preceding review during a time when mandatory respondent margins dropped to zero."); *Baroque Timber Indus. (Zhongshan) Co. v. United States*, 971 F. Supp. 2d 1333, 1345 (CIT 2014) (rejecting Commerce's determination for failing "to make a connection between the selected rate and respondents' economic reality and factual situation."); *Linyi Chengen Imp. & Exp. Co. v. United States,* 609 F. Supp. 3d 1392, 1404 (CIT 2022) ("Commerce's determination to assign to fully cooperating separate rate respondents an all-others separate rate margin almost 60 times higher than the only investigated respondent, and half of the AFA rate for uncooperative respondents, is unreasonable as applied because it is unfair and unduly punitive."); *Bosun Tools Co. v. United States*, 493 F. Supp. 3d 1351, 1357 (CIT 2021) (affirming Commerce's selection of a 41.025% rate because "the last calculated rate for non-individually examined respondents in 2013-2014, of 39.66 percent, is only slightly less than the rate sought to be imposed here."), *aff'd* Case No. 2021-1930, 2022 WL 94172, *6 (Fed. Cir. Jan. 10, 2022) ("Commerce reasonably determined that the 41.025% rate was reflective of Bosun's historical dumping rates."); *GODACO Seafood Joint Stock Co. v. United States*, 539 F. Supp. 3d 1286, 1290 (CIT 2021), *appeal withdrawn*, No. 2022-1202, 2022 WL 1739162 (Fed. Cir. Feb. 16, 2022) ("Because the Court already held that Commerce's application of the expected method was unreasonable when Commerce assigned an AFA rate to the cooperating Separate Rate Plaintiffs, the Court sustains Commerce's departure from the expected method in the Second Remand Results.").

[4] *See also Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1351-53 (Fed. Cir. 2016) ("Finally, as our cases have explained, accuracy and fairness must be Commerce's primary objectives in calculating a separate rate for cooperating exporters"). *See Bestpak,* 716

The Department also failed to consider *Changzhou Wujin Fine Chem. Factory Co. v. United States*, wherein the Federal Circuit reasoned:

> The statute's use of the word "including" contemplates the possibility of other valid approaches, and the requirement that the method be "reasonable" imposes a duty on Commerce to select a method appropriate for the circumstances. Furthermore, AFA rates are disfavored by the statute: section 1673d(c)(5)(B) is an exception to the preferred method in section 1673d(c)(5)(A), which instructs that AFA rates, like de minimis and zero rates, should be excluded.

701 F.3d 1367, 1378-79 (Fed. Cir. 2012).

Applying these principles to the instant AR 21-22 establishes why Commerce's decision is not supported by substantial evidence and is contrary to the best reading of the statute. As discussed above, Commerce conducted ten annual reviews of the ADD Order on Stainless Steel from Taiwan, with the following results:

| AR # | PERIOD | CALCULATED RATES | AFA RATE |
|------|--------|------------------|----------|
| 1 | 1/4/99 – 6/30/00 | Zero (2) | 21.10 (1) |
| 2 | 7/1/00 – 6/30/01 | Zero (2) | 21.10 (1) |
| 3 | 7/1/01 – 6/30/02 | 0.98% (1), 1.96% (1) | 21.10 (1) |
| 4 | 7/1/02 – 6/30/03 | 1.10% (1), 1.92% (1) | N/A |
| 5 | 7/1/03 – 6/30/04 | Zero (1), 1.36% (1) | 21.10 (4) |
| 6 | 7/1/04 – 6/30/05 | 0.79% (1) | 21.10 (5) |
| 7 | 7/1/05 – 6/30/06 | 1.41% (1) | 21.10 (1) |
| 8 | 7/1/06 – 6/30/07 | 2.71% (1) | N/A |
| 9 | 7/1/07 – 6/30/08 | 4.3% (1) | N/A |
| 10 | 7/1/08 – 6/30/09 | Zero (1) | 4.30% (19) |

---

F.3d at 1379 ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible."); *Gallant Ocean (Thailand) Co., v. United States,* 602 F.3d 1319, 1323 (Fed. Cir. 2010) (a rate must be a "reasonably accurate estimate of the respondent's actual rate") (internal quotation marks & citations omitted); *SNR Roulements v. United States,* 402 F.3d 1358, 1363 (Fed. Cir. 2005) ("Antidumping laws intend to calculate antidumping duties on a fair and equitable basis."); *Rhone Poulenc, Inc. v. United States,* 899 F.2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose of the statute" is to "determine{e} current margins as accurately as possible"); *see also Nan Ya Plastics Corp. v. United States,* 810 F.3d 1333, 1344-45 (CIT 2016) (accuracy represents a "reliable guidepost{} for Commerce's determinations," and a determination is "accurate" if it is "supported by substantial evidence").

Thus, during a 10-year period, Commerce calculated ADD rates for 15 mandatory respondents, with rates ranging from zero to 4.30 percent, and in AR 10 Commerce looked backward to apply a 4.30 percent rate to respondents who were not selected for examination. In contrast, in these ten reviews Commerce applied a 21.10 percent total AFA rate only to those respondents who failed to cooperate to the best of their ability.

In light of these facts, application of the *Bestpak* principles leads to the inescapable conclusion that applying a 21.10 percent AFA rate to non-examined, cooperating respondents in the instant AR is not supported by substantial evidence and is contrary to basic principles of "fairness or accuracy" and that "rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins." *Bestpak*, 716 F.3d at 1380. Query: How does a total AFA rate of 21.10 percent applied to companies who failed to cooperate have any relationship to the actual dumping margins of cooperative respondents when the Department calculated rates for 15 cooperative mandatory respondents in AR 21-22 of the ADD Order on Stainless Steel from Taiwan never exceeded 4.30 percent?

Moreover, Commerce's decision to apply an AFA rate to "all others" companies in this review constitutes a stark departure from how the Department had treated "all other" companies in prior segments of the ADD Order on Stainless Steel from Taiwan, including the Department's reasonable decision in the preliminary determination. It also is contrary to the Department's practice in contemporaneous decisions in other cases. For example, on January 9, 2023, in *Certain Quartz Surface Products From India* ("*QSP from India*"), Commerce discussed its preferred methodology in selecting the non-selected respondent rate in market economy annual reviews:

In determining a reasonable methodology for calculating a rate for the non-selected companies, Commerce relied on guidance from the SAA and from the CAFC in *Albemarle*. Similar to *Nails from Oman Final Results*, we find that the most reasonable approach in assigning a rate to the non-selected companies in this instance is to pull forward the all-others rate calculated in the underlying investigation. While Commerce's preference continues to be that we will use contemporaneous information where possible, in this instance, the expected method is not reasonably reflective of the potential dumping margins of the non-selected companies, and pulling forward the all-others rate from the investigation is a reasonable method to determine the rate for the non-examined respondents. The all-others rate from the investigation is an average of individually calculated rates from two respondents, and follows the general rule, which excludes margins that are zero or *de minimis* and margins determined entirely on the basis of facts available. Therefore, we are assigning the dumping margin of 3.19 percent to the non-selected companies subject to this administrative review, which is the all-others rate from the underlying investigation.

*QSP from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, 88 Fed. Reg. 1188 (Jan. 9, 2023), accompanying IDM Comment 5.

In *QSP from India*, the Department followed the Federal Circuit's analysis in *Bestpak,* which remains good law, notwithstanding *PrimeSource.* This Court therefore has the discretion to follow the *Bestpak r*ationale, and to reach a decision grounded in the statutory language, commercial reality, and the Congressional mandate to calculate ADD margins for cooperating respondents in a manner that bears some relationship to their actual ADD margins. This is the "best method" of construing the law; the method which led to imposing an AFA rate on companies which themselves fully cooperated in AR 21-22 is not.

In addition, in AR 21-22, Commerce's RS Memo noted that "this review covers 61 exporters or producers of subject merchandise," but then showed data for merely three companies. RS Memo at 2, Attachment. This obvious disconnect between the companies subject to review and the data upon which Commerce selected mandatory respondents undermines the Department's conclusion that the selected respondents were representative of the exporters

subject to review.

Finally, Commerce improperly claimed a lack of evidence showing that the non-examined companies' dumping was different from that of the mandatory respondents while not advising interested parties of the need to submit such evidence of even attempting to select additional respondents after being notified early in AR 21-22 that the two mandatory respondents would not participate in the AR. In this regard, Commerce's preliminary decision conformed to the manner in which it had administered the ADD Order on Stainless Steel from Taiwan in the past, to judicial precedent prior to the Federal Circuit's decision in *PrimeSource* (*i.e., Bestpak* and its progeny), and to the Department's decisions in contemporaneous cases (e.g., *QSP from India*). Thus, interested parties had no reason to believe that Commerce would reverse course in its final determination. They had no reason to believe that they needed to place additional information on the record to establish that their ADD rate was closer to 4.3 percent (the highest margin calculated for any mandatory respondent in ARs of the ADD Order on Stainless Steel from Taiwan) that it was to 21.1 percent (a rate assigned to companies who had failed to cooperate to the best of their ability).

Interested partes were effectively sandbagged by Commerce's change of position. This Court's admonition against sandbagging in *Bowe-Passat v. United States*, is equally applicable to this case:

> This predatory "gotcha" policy does not promote cooperation or accuracy or reasonable disclosure by cooperating parties intended to result in realistic dumping determinations. Rather, this behavior encourages parties to front-load investigations with all manner of unnecessary information to back up their claims. {Commerce}'s behavior was all the more unreasonable in this case because Böwe was misled into believing that it had satisfied its burden regarding certain expenses by the absence of specific mention or concern for those items in the deficiency letter Commerce did decide to issue.

17 CIT 335, 343 (1993).

Similarly, CME and its non-selected vendors had no reason to front-load the annual review by submitting information establishing that they should be subject to a 4.30 percent rate rather than a 21.10 percent rate. They reasonably believed that Commerce would follow judicial precedent and its own practice and pull-forward a calculated rate to assess ADD in this annual review than to apply a rate based on total AFA. And when their concerns were alleviated by Commerce's preliminary determination, they had no reason to request that Commerce allow them to supplement the record by submitting data after the record had closed. For these reasons, at the very least, this Court should remand this case to Commerce to reopen the record to allow interested parties to establish that the 21.10 percent rate should not apply to non-selected cooperative respondents.

## CONCLUSION

For all of the reasons discussed above, we respectfully submit that this Court should conclude that Commerce erred by taking a simply average of the AFA rates of the two mandatory respondents and assigning that rate to the companies not selected for individual examination. This Court should order Commerce assign to non-selected companies the ADD rate of 4.3 percent, the rate assigned to the most recently completed segment of this proceeding which conforms to law and is based on substantial evidence.

Respectfully submitted,

/s/ *Ned H. Marshak*
Ned H. Marshak*
Jordan C. Kahn
Eve Q. Wang

GRUNFELD, DESIDERIO, LEBOWITZ
SILVERMAN & KLESTADT LLP

*599 Lexington Avenue-36th Floor
New York, NY  10022
(212) 557-4400

1201 New York Ave., NW, St. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff CME Acquisitions,
LLC*

Dated:  August 21, 2024

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for Plaintiffs' Memorandum of Law In Support of its 56.2 Motion, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 6,982 words, less than the 14,000 word limit.

*/s/ Ned H. Marshak*
Ned H. Marshak

*Counsel for Plaintiff*

Dated: August 21, 2024