# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| CME ACQUISITIONS, LLC, | : |
| Plaintiff, | : |
| v. | : Court No. 24-00032 |
| UNITED STATES, | : |
| Defendant, | : |
| and | : |
| OUTOKUMPU STAINLESS USA, LLC and NORTH AMERICAN STAINLESS, | : |
| Defendant-Intervenors. | : |

### PLAINTIFF'S REPLY TO DEFENDANT AND DEFENDANT-INTERVENORS' RESPONSES TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Ned H. Marshak*
Jordan C. Kahn
Eve Q. Wang

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

*599 Lexington Avenue FL 36
New York, NY 10022
(212) 557-4000

1201 New York Ave., NW, St. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff CME Acquisitions, LLC*

Dated: January 21, 2025

**TABLE OF CONTENTS**

I. *PRIMESOURCE* DOES NOT OVERTURN ESTABLISHED PRECEDENT .................. 3

II. COMMERCE'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ................................................................................................................ 5

III. THE GOVERNMENT AND PETITIONERS FAILED TO REHABILITATE COMMERCE'S RATIONALE .................................................................................... 8

   A. *ALEBEMARLE* AND *CHANGZHOU* HAWD DO NOT SUPPORT COMMERCE ......... 8

   B. THE STATUTORY LANGUAGE DOES NOT REQUIRE THAT COMMERCE REJECT PRINCIPLES OF ACCURACY AND FAIRNESS ........................................... 9

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Albermarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345 (Fed. Cir. 2016) .................... 8

*Changzhou Hawd Flooring Co. v. United States,* 848 F.3d 1006 (Fed. Cir. 2017).......... 5, 8, 9, 10

*KYD, Inc. v. United States*, 607 F.3d 760, 767 (Fed. Cir. 2010) .................................................... 8

*Oman Fasteners, LLC v. United States*, 2025 WL 37898 (Fed. Cir. Jan. 7, 2025) ........................ 7

*PrimeSource Bldg. Prods., Inc. v. United States,* 111 F.4th 1320 (Fed. Cir. 2024) ................... 2, 3

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013) ...... 1, 2, 3

*YC Rubber Co. (N. Am.) LLC v. United States*, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022) .... .5

**Statutes**

19 U.S.C. § 1673d................................................................................................................. 4, 9, 10

**Federal Register Publications**

*Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021,* 88 Fed. Reg. 1188 (Jan. 9, 2023)............................................................... 2

*Stainless Steel Sheet and Strip in Coils from Taiwan: Notice of Final Determination of Sales at Less Than Fair Value,* 64 Fed. Reg. 30,592 (June 8, 1999) ..................................................... 4, 6

*Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results and Partial Rescission of Antidumping Administrative Review*, 67 Fed. Reg. 6682 (Feb. 13, 2002).................................. 4

*Stainless Steel Sheet and Strip in Coils from Taiwan: Preliminary Results and Rescission in Part of Antidumping Duty Administrative Review*, 75 Fed. Reg. 49,467 (Aug. 13, 2010)................. 2

*Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results and Rescission of Antidumping Duty Administrative Review*, 75 Fed. Reg. 76,700 (Dec. 9, 2010) ................... 2, 6

*Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022,* 89 Fed. Reg. 902 (Jan. 8, 2024) ............................................................................................... 1

Plaintiff CME Acquisitions, LLC ("CME") submits this Response to the Reply Briefs filed by Defendant, United States ("Government"), on November 26, 2024, ECF 36 ("Gov. Br.") and Defendant-Intervenors North American Stainless and Outokumpu Stainless USA, LLC (collectively, "Petitioners") on November 26, 2024, ECF 35 ("Pet. Br.") opposing CME's Motion for Judgment on the Agency Record and Opening Brief filed on May 28, 2024, ECF 28 ("CMC Br.).

The issue in this Civil Action is whether the U.S. Department of Commerce's ("Commerce" or "Department") determination in the 2021-2022 administrative review ("AR 21-22") of the antidumping duty ("ADD") order on Stainless Steel Sheet and Strip in Coils ("Stainless Steel" or "SSSSC") from Taiwan, for the period of review ("POR") July 1, 2021, to June 30, 2022, to apply a 21.10 percent ADD rate based on total adverse facts available ("AFA") to non-selected exporters who did not themselves fail to co-operate to the best of their ability was supported by substantial record evidence and otherwise in accordance with law. *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments: 2021-2022*, 89 Fed. Reg. 902 (Jan. 8, 2024), P.R. 68 ("*SSSC AR21-22 Final Results*"), accompanying Issues and Decision Memorandum, P.R. 67 ("IDM").

The record in this case is relatively small and the facts are not complex. Moreover, Commerce's authority to apply a total AFA rate to co-operative companies has been subject to multiple decisions by the Department and this court and the Court of Appeals for the Federal Circuit ("CAFC"). *See* CMC Br. at 16, n. 3 (referencing judicial decisions following the CAFC's seminal opinion in *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370 (Fed. Cir. 2013) ("*Bestpak*"). Prior to the CAFC's August 7, 2024, decision in *PrimeSource Bldg.*

1

*Prods., Inc. v. United States,* 111 F.4th 1320 (Fed. Cir. 2024), judicial precedent and administrative practice strongly favored CME's position that margins for non-selected respondents should be based on non-contemporaneous calculated margins, rather than on the total AFA rate applied to mandatory respondents in the annual review being challenged. The CAFC in *Bestpak* reasoned that:

1. "Commerce may not select unreasonably high rates having no relationship to the respondent's actual dumping margin;"

2. "rate determinations for nonmandatory, cooperating separate rate respondents must also bear some relationship to their actual dumping margins"; and

3. "limited resources or statutory time constraints cannot override fairness or accuracy."

*Bestpak*, 716 F.3d at 1379-80.

Commerce followed the *Bestpak* judicial precedent. For example, in its 2023 determination *Certain Quartz Surface Products from India: Final Results of Antidumping Duty Administrative Review; 2019-2021*, Commerce reasoned that "the most reasonable approach in assigning a rate to the non-selected companies in this instance is to pull forward the all-others rate calculated in the underlying investigation." 88 Fed. Reg. 1188 (Jan. 9, 2023), accompanying IDM Comment 5. And in this Stainless Steel from Taiwan ADD Order, in the tenth administrative review ("AR10"), Commerce stated that "where, as here, the only calculated margins are zero or *de mimimis*, it is the Department's practice to base the review-specific rate on calculated rates from prior segments of the proceeding." *Stainless Steel Sheet and Strip in Coils from Taiwan: Preliminary Results and Rescission in Part of Antidumping Duty Administrative Review*, 75 Fed. Reg. 49,467, 49,474 (Aug. 13, 2010); *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results and Rescission of Antidumping Duty Administrative Review*, 75 Fed. Reg. 76,700, 76,700 (Dec. 9, 2010) ("*SSSSC from Taiwan AR10 Final Results*")

2

("Based on our analysis of the comments received, we have made no changes in the margin calculations.")

I. *PRIMESOURCE* **DOES NOT OVERTURN ESTABLISHED PRECEDENT**

The CAFC's decision in *PrimeSource* does not overturn the judicial and administrative precedent that favors assigning look-back calculated rates to non-selected respondents rather than assigning these co-operating companies a rate based on total AFA.

First, the *PrimeSource* decision was based on the facts of that case. The CAFC reasoned: "{h}ere, Commerce's decision not to depart from the expected method was in accordance with the law and supported by substantial evidence." 111 F. 4th at 1335. By limiting its decision in this manner, Commerce recognized that relying on the expected method did not necessarily lead to reasonable results or to a decision which was based on substantial evidence.

Second, *PrimeSource* did not overrule or limit *Bestpak.* The CAFC in *PrimeSource* held that "*Bestpak* does not address Commerce's burden when it calculates the all-others rate using the expected method." *PrimeSource*, 111 F. 4th at 1331. Thus, regardless where the burden falls, *Bestpak* remains controlling law. Under *Bestpak,* Commerce:

1. is required to consider fairness and accuracy in calculating margins for companies who are not themselves guilty of not acting to the best of their ability;

2. cannot rely on margins which are "unreasonable as applied"; and

3. must base its decision on "substantial evidence . . . {which} . . . reflects economic reality."

*Bestpak*, 716 F.3d at 1378.

Finally, like its decision in *Bestpak,* Commerce's decision in *SSSC AR21-22* was not based on a weighted average of two calculated rates. In its IDM, Commerce expressly stated that "we have applied the 'expected method' as intended by Congress and **assigned a simple**

3

**average** of the AFA rates applied to the mandatory respondents to the companies not selected for individual examination." IDM at 8-9 (emphasis added). The Government attempts to justify Commerce's failure to follow the expected method (*i.e.*, which requires that Commerce rely on a weighted average) by arguing that because the rates applied to the mandatory respondents were identical, "the weighted average of those rates, by mathematical necessity, is equivalent to their simple average." Gov. Br. at 11, 5 n. 4. While the Government's arithmetic is correct, it fails to consider the fact that the statutory requirement that Commerce rely on a weighted average of rates rests on the premise that the rates for more than one respondent will be calculated and not reflect only one rate based on data placed on the record by Petitioner in the initial investigation.

In fact, in this case the 21.10 percent rate was the total AFA rate assigned to one mandatory respondent, YUSCO, in the original investigation, for the period April 1, 1997, through March 31, 1998. *Stainless Steel Sheet and Strip in Coils from Taiwan: Final Results and Partial Rescission of Antidumping Administrative Review*, 67 Fed. Reg. 6682 (Feb. 13, 2002), IDM Comment 28 ("Instead, we are assigning Chia Far as AFA 21.10%, the rate assigned to YUSCO in the original investigation"); *Stainless Steel Sheet and Strip in Coils from Taiwan: Notice of Final Determination of Sales at Less Than Fair Value,* 64 Fed. Reg. 30,592, 30,599-600 (June 8, 1999) ("*SSSSC from Taiwan Final Determination*") ("we have chosen the highest petition margin (based on price-to-price comparisons) for Taiwan of 21.10 percent as the basis for using total {AFA}."). In other words, Commerce in *SSSSC AR21-22* relied on one rate, which was not calculated, but instead represented the highest single rate claimed in the petition. This rate does not rise to the dignity of a calculated rate used to determine a weighted average margin as that term is defined in Section 735(c)(5), Tariff Act of 1930, as amended. 19 U.S.C. § 1673d(c)(5).

Moreover, in *Changzhou Hawd Flooring Co. v. United States*, the CAFC noted that the statutory expected method of calculating rates for non-selected respondents should be based on language in the Statement of Administrative Action ("SAA").

> But the Statement of Administrative Action accompanying the Uruguay Round Agreements Act—which Congress has deemed "authoritative," 19 U.S.C. § 3512(d)—states that the "expected method" is to "weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available."

848 F.3d 1006, 1011 (Fed. Cir. 2017). Thus, the expected method requires that Commerce rely on volume data to calculate a weighted average. In this case, since volume data was not available, the expected method could not be used.

Applicable to this case is the CAFC's decision in *YC Rubber Co. (N. Am.) LLC v. United States*, 2022 WL 3711377, *3 (Fed. Cir. Aug. 29, 2022). In *YC Rubber*, the CAFC reasoned that: (1) "The statute requires a reasonable foundation for the average dumping margin calculated for multiple importers;" and (2) "Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents." *Id*. Similarly, in this case, Commerce erred by reasoning that the "expected" weighted average methodology could be based on a rate applied to a single entity in an investigation conducted over 20 years in the past.

In sum, insofar as *PrimeSouce* did not overturn *Bestpak*, and insofar as Commerce did not rely on the "expected method" to calculate non-selected company dumping margins, the CAFC's holding in *PrimeSource* does not control this Court's decision in this case.

## II. COMMERCE'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

As discussed above, the facts in this case are not complex. Section I, *supra*. The 21.10 percent total AFA rate applied to the non-selected respondents was based on the total AFA rate assigned to one mandatory respondent, Yieh United Steel Corporation ("YUSCO"), in the

5

original investigation, for the POR spanning April 1, 1997, through March 31, 1998. *SSSSC from Taiwan Final Determination*, 64 Fed. Reg. at 30,599-600. The calculated rates for all mandatory respondents in annual reviews of the SSSSC from Taiwan ADD Order are set forth below.

| AR # | PERIOD | CALCULATED RATES | AFA RATE |
|---|---|---|---|
| 1 | 1/4/99 – 6/30/00 | Zero (2) | 21.10 (1) |
| 2 | 7/1/00 – 6/30/01 | Zero (2) | 21.10 (1) |
| 3 | 7/1/01 – 6/30/02 | 0.98% (1), 1.96% (1) | 21.10 (1) |
| 4 | 7/1/02 – 6/30/03 | 1.10% (1), 1.92% (1) | N/A |
| 5 | 7/1/03 – 6/30/04 | Zero (1), 1.36% (1) | 21.10 (4) |
| 6 | 7/1/04 – 6/30/05 | 0.79% (1) | 21.10 (5) |
| 7 | 7/1/05 – 6/30/06 | 1.41% (1) | 21.10 (1) |
| 8 | 7/1/06 – 6/30/07 | 2.71% (1) | N/A |
| 9 | 7/1/07 – 6/30/08 | 4.30% (1) | N/A |
| 10 | 7/1/08 – 6/30/09 | Zero (1) | 4.30% (19) |

CMC Br. at 3-6, 17.

In other words, Commerce applied a rate derived from data relating to sales prior to 1997 – 1998 (the original period of investigation), which was intended to induce cooperation from respondents who failed to co-operate, to respondents who, in fact, co-operated in an Annual Review encompassing sales over twenty years later in 2020 – 2021. Additionally, Commerce applied this rate in this manner notwithstanding the fact that in ten reviews over a ten-year period, from 1999 – 2009, the Department's calculated rates for mandatory respondents ranged from zero to 4.30 percent, and in the last full review, AR10, the Department applied a 4.30 percent rate to co-operative non-mandatory respondents. *SSSSC from Taiwan AR10 Final Results*, 75 Fed. Reg. at 76,702. In light of these facts, Commerce's decision is facially unfair, and contrary to substantial record evidence as to the rates which should be applied to cooperating respondents subject to the ADD Order on SSSSC from Taiwan.

In its Brief, the Government claims that Commerce correctly rejected the calculated rates referenced by Plaintiff since "the most recent non-selected rate, of 4.30 percent, was calculated

6

over a decade ago." Gov. Br. at 16. This argument supports CME's position that this Court should reject the 21.10 rate, since that rate was calculated over two-decades ago, based on data from 1997 –1998. And since the decade old rates represent 10 years of calculated rates of cooperative respondents, while the two-decades old data reflects one rate applied to a respondent who failed to cooperate, there should be no serious question as to which of these rates should apply to the non-selected respondents in this case.

The inherent unfairness and illegality of Commerce's decision is apparent from reviewing the recent CAFC decision limiting the Department's discretion to apply total AFA to non-co-operating respondents. *Oman Fasteners, LLC v. United States*, 2025 WL 37898 (Fed. Cir. Jan. 7, 2025). The CAFC reasoned:

> {Commerce's decision} is a gross departure from the established principle that Commerce, when applying the adverse-inference provision, must pursue accuracy, with any departure limited to what is needed to deter non-compliance with Commerce rules and orders. As we have noted, the Commerce-determined rates for Oman Fasteners preceding the present review were 0.63%, 0.00%, 0.00%, 0.00%, and 1.65% (after the original investigation had adopted a 9.10% rate, which had been reduced to 4.22% by early August 2022).

*Id*. *11.

Similarly, in this case, the calculated margins for cooperating respondents in 10 prior reviews of the ADD Order on SSSSC from Taiwan ranged from zero to 4.30 percent, and in the most recent review, Commerce applied a "look back" rate of 4.30 percent to non-selected respondents. Query, in light of these facts, and the CAFC's mandate that Commerce "must pursue accuracy . . . with any departure to what is needed to deter non-compliance" from respondents who do not cooperate, *Oman Fasteners*, 2025 WL 37898, *11, how can Commerce reasonably justify applying a total AFA rate to cooperative respondents? We respectfully submit that Commerce's decision cannot be justified and, accordingly, should be reversed.

### III. THE GOVERNMENT AND PETITIONERS FAILED TO REHABILITATE COMMERCE'S RATIONALE

In their Briefs, the Government and Petitioners attempt to justify the Department's decision. As discussed below, these attempts fail because: (a) the CAFC precedent they rely upon does not support Commerce; and (b) the statutory language does not require that Commerce reject principles of accuracy and fairness.

#### A. *ALBEMARLE* AND *CHANGZHOU HAWD* DO NOT SUPPORT COMMERCE

Contrary to the Government and Petitioners' claims, Commerce's determination is not supported by the CAFC decisions: *Albermarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1553 (Fed. Cir. 2016); and *Changzhou Hawd Flooring Co. v. United States*, 848 F. 3d 1006, 1012 (Fed. Cir. 2017). *See* Gov. Br. at 4, 6, 8, 12, 15-18; Pet. Br. at 9, 11, 15-16. In *Albermarle*, the CAFC rejected Commerce's refusal to apply a calculated *de minimis* rate to non-selected respondents based in large measure "the statute's manifest preference for contemporaneity in periodic administrative reviews." *Albermarle*, 821 F.3d at 1356. The CAFC also expressly distinguished relying on a contemporaneous rate from relying on an AFA rate, reasoning that "where Commerce is allowed to consider deterrence as a factor, we have upheld Commerce's use of data from a previous administrative review." *Id.* at 1357. The CAFC stated: "Commerce may presume that 'a prior dumping margin imposed against an exporter in an earlier administrative review continues to be valid if the exporter fails to cooperate in a subsequent administrative review.'" *Id*. at 1357-58 (quoting *KYD, Inc. v. United States*, 607 F.3d 760, 767 (Fed. Cir. 2010)). It reasoned that "in order to divert from the expected method, substantial evidence must demonstrate that the non-examined companies dumping behavior would be different from that of the mandatory respondents." Gov. Br. at 9.

By contrast, in this case, Commerce's AFA rate reflected a rate derived from data

8

contemporaneous with a 1997 – 1998 period of investigation – two decades in the past – and the non-selected companies cannot be presumed to have failed to cooperate in the current review or prior reviews. They cannot be presumed to behave in a manner which would justify increasing their calculated rates to guard against their failure to cooperate. Thus, accuracy and fairness do not support saddling these companies with a 21.10 percent dumping margin.

*Changzhou Hawd* similarly does not support Commerce's decision. In that case, the CAFC expressly distinguished *Bestpak*, reasoning that "{h}ere, in contrast, there is no issue of an unreasonably high average of the individually investigated firms' rates; as in *Albemarle*, 821 F.3d at 1349, the average in this case is zero or *de minimis*." *Changzhou Hawd*, 848 F.3d at 1011 n.4. Thus, as in *Albermarle,* in *Changzhou Hawd* the CAFC distinguished zero and *de minimis* rates, which were presumably representative of rates to be applied to non-selected respondents, from total AFA rates, which could not be representative of rates to be applied to no-selected respondents, because they had a built-in increase from a calculated, representative rate.

### B. THE STATUTORY LANGUAGE DOES NOT REQUIRE THAT COMMERCE REJECT PRINCIPLES OF ACCURACY AND FAIRNESS

The Government argues that Commerce's decision "complied with the statute" and "principles of accuracy and fairness do not override the statute." Gov. Br. at 12. CME agrees that this Court is required to follow unambiguous statutory directives. However, Section 735(c)(5), Tariff Act of 1930, as amended, merely requires that Commerce rely on a "reasonable method" for calculating margins for non-selected companies – without specifying the precise method which should be used:

> **(A) General rule**
>
> For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers

individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

**(B) Exception**

**If the estimated <u>weighted average dumping margins</u> established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e** of this title, the administering authority **may use any reasonable method** to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

19 U.S.C. § 1673d(c)(5) (emphases added).

Moreover, the SAA does not mandate reliance on the expected method but merely states that this method consists of weight-averaging "the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available." *Changzhou Hawd*, 848 F.3d at 1011 This SAA instruction cannot override Commerce's statutory mandate to rely on a reasonable method to calculate dumping margins and its overriding obligation to calculate margins in a fair and accurate manner, which conforms to economic reality and which bears some relationship to a respondent's actual margin of dumping. Since margins based on total AFA, by definition, have a built-in increase to deter non-compliance, the "expected method" of applying an AFA margin to a fully cooperating respondent should be limited to those instances when volume data is available to allow Commerce to weight average a zero/ *de-minimis* rate with a rate based on total AFA. This construction of the SAA allows Commerce to administer the law in accordance with legislative intent. It results in margins which conform to both the plain meaning of Section 735(c)(5) and Congress' intention to calculate accurate margins for cooperating respondents, without a built-in increase. And as discussed, this result follows the rationale in *Bestpak* and its progeny which was not reversed or limited by *PrimeSource*.

**CONCLUSION**

For all of the reasons discussed in CMC's Brief, and in this response, we respectfully request that this Court reverse Commerce's decision to calculate the dumping rate of non-selected co-operative respondents based on the total AFA rate assigned to the two mandatory respondents who failed to cooperate in the Annual Review, when the assigned rate was based on data from the original 1997 – 1998 investigation. This Court should then order Commerce to assign to non-selected companies the ADD rate of 4.30 percent, the rate assigned to non-selected respondents in the most recently completed segment of this proceeding, since application of that rate conforms to law and is based on substantial evidence.

Respectfully submitted,

/s/ *Ned H. Marshak*
Ned H. Marshak*
Jordan C. Kahn
Eve Q. Wang

GRUNFELD, DESIDERIO, LEBOWITZ SILVERMAN & KLESTADT LLP

*599 Lexington Avenue-36th Floor
New York, NY  10022
(212) 557-4400

1201 New York Ave., NW, St. 650
Washington, DC 20005
(202) 783-6881

*Counsel for Plaintiff CME Acquisitions, LLC*

Dated:  January 21, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for *Plaintiff's Reply Brief*, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 3,199 words, less than the 7,000 word limit.

                                                          */s/ Ned H. Marshak*
                                                          Ned H. Marshak

                                                          *Counsel for Plaintiff*

Dated: January 21, 2025

13111150_1